JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
DIANE ROLDÁN (Cal. Bar No. 288224)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6567
     Facsimile: (213) 894-0141
     Email:      diane.roldan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　　　　v.<br><br>JENNIFER QUAN,<br><br>　　　　　Defendant. | No. 2:23-CR-00314(A)-HDV<br><br>PLEA AGREEMENT FOR DEFENDANT<br>JENNIFER QUAN |

　　　1.　　This constitutes the plea agreement between JENNIFER QUAN ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

　　　2.　　Defendant agrees to:

　　　　　a.　　At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts one, eleven, fifteen, and twenty-three of the indictment in United States v. Quan,

SB

No. 2:23-CR-00314(A)-HDV, which charge defendant with Wire Fraud in violation of 18 U.S.C. § 1343 (counts one, fifteen, and twenty-three) and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1) (count eleven).

      b.   Not contest facts agreed to in this agreement.

      c.   Abide by all agreements regarding sentencing contained in this agreement.

      d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

      e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

      f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

      g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

      h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

      i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all

of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

   j. Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

   k. Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

  3. Defendant further agrees:

   a. To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following:

   i. $1,739.67 in funds from Cathay Bank checking account number 167047701, held in the name of Jennifer Quan;

   ii. $240,445.00 in funds from Cathay Bank savings account number 25308564, held in the name Jennifer Quan;

   iii. $1,716.14 in funds from Capital One bank checking account number 36144197371, held in the name Jennifer Quan;

   iv. $9,504.05 in funds from Capital One bank savings account number 36216653662, held in the name Jennifer Quan;

3

1      v.   $2,633.87 in funds from Capital One bank checking
2 account number 36235565609, held in the name Von Quan;

3      vi.  $32,503.42 in funds from Capital One bank savings
4 account number 36235565711, held in the name Von Quan; and

5      vii. $56,330.00 in U.S. currency seized by the Orange
6 County Sheriff's Department on February 15, 2023, from QUAN's
7 residence, plus all interest earned on the currency since seizure
8 (collectively, the "Forfeitable Property").

9      b.   To the Court's entry of an order of forfeiture at or
10 before sentencing with respect to the Forfeitable Property and to the
11 forfeiture of the property.

12      c.   That the Preliminary Order of Forfeiture shall become
13 final as to the defendant upon entry.

14      d.   To take whatever steps are necessary to pass to the
15 United States clear title to the Forfeitable Property, including,
16 without limitation, the execution of a consent decree of forfeiture
17 and the completing of any other legal documents required for the
18 transfer of title to the United States.

19      e.   Not to contest any administrative forfeiture
20 proceedings or civil judicial proceedings commenced against the
21 Forfeitable Property.  If defendant submitted a claim and/or petition
22 for remission for all or part of the Forfeitable Property on behalf
23 of herself or any other individual or entity, defendant shall and
24 hereby does withdraw any such claims or petitions, and further agrees
25 to waive any right she may have to seek remission or mitigation of
26 the forfeiture of the Forfeitable Property.  Defendant further waives
27 any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

28

4

f.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

g.   Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

h.   To prevent the transfer, sale, destruction, or loss of the Forfeitable Property to the extent defendant has the ability to do so.

i.   To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

j.   That forfeiture of Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

k.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.   Defendant acknowledges that the forfeiture of the Forfeitable Property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of

1  Criminal Procedure 11(b)(1)(J), at the time the Court accepts
2  defendant's guilty plea.

### THE USAO'S OBLIGATIONS

3
4      4.   The USAO agrees to:
5           a.   Not contest facts agreed to in this agreement.
6           b.   Abide by all agreements regarding sentencing contained
7  in this agreement.
8           c.   At the time of sentencing, move to dismiss the
9  remaining counts of the indictment as against defendant.   Defendant
10 agrees, however, that at the time of sentencing the Court may
11 consider any dismissed charges in determining the applicable
12 Sentencing Guidelines range, the propriety and extent of any
13 departure from that range, and the sentence to be imposed.
14          d.   At the time of sentencing, provided that defendant
15 demonstrates an acceptance of responsibility for the offenses up to
16 and including the time of sentencing, recommend a two-level reduction
17 in the applicable Sentencing Guidelines offense level, pursuant to
18 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
19 additional one-level reduction if available under that section.
20          e.   Except for criminal tax violations (including
21 conspiracy to commit such violations chargeable under 18 U.S.C.
22 § 371), not further criminally prosecute defendant for Mail Fraud,
23 in violation of 18 U.S.C. § 1341, Wire Fraud, in violation of 18
24 U.S.C. § 1343, or Aggravated Identity Theft, in violation of 18
25 U.S.C. § 1028A(a)(1), arising out of defendant's conduct described
26 in the agreed-to factual basis set forth in paragraph 15 below.
27 Defendant understands that the USAO is free to criminally prosecute
28 defendant for any other unlawful past conduct or any unlawful

conduct that occurs after the date of this agreement. Defendant
agrees that at the time of sentencing the Court may consider the
uncharged conduct in determining the applicable Sentencing
Guidelines range, the propriety and extent of any departure from
that range, and the sentence to be imposed after consideration of
the Sentencing Guidelines and all other relevant factors under 18
U.S.C. § 3553(a).

NATURE OF THE OFFENSES

5.   Defendant understands that for defendant to be guilty of
the crimes charged in counts one, fifteen, and twenty-three, that is,
Wire Fraud, in violation of Title 18, United States Code, Section
1343, the following must be true: (1) defendant knowingly
participated in, devised, or intended to devise a scheme or plan to
defraud for the purpose of obtaining money or property by means of
false or fraudulent pretenses, representations, or promises, or
omitted facts; (2) the statements made or facts omitted as part of
the scheme were material; that is, they had a natural tendency to
influence, or were capable of influencing, a person to part with
money or property; (3) defendant acted with the intent to defraud,
that is, the intent to deceive and cheat; and (4) defendant used, or
caused to be used, an interstate or foreign wire communication to
carry out or attempt to carry out an essential part of the scheme.

6.   Defendant understands that for defendant to be guilty of
the crime charged in count eleven, that is, Aggravated Identity
Theft, in violation of Title 18, United States Code, Section
1028A(a)(1), the following must be true: (1) defendant knowingly
transferred, possessed, or used without legal authority a means of
identification of another person; (2) defendant knew that the means

of identification belonged to a real person; and (3) defendant did so during and in relation to wire fraud, a felony in violation of 18 U.S.C. § 1343, as charged in the indictment.

## PENALTIES AND RESTITUTION

7.   Defendant understands that the statutory maximum sentence that the Court can impose for each violation of 18 U.S.C. § 1343 is: 20 years' imprisonment; a 3-year period of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1028A(a)(1) is: 2 years' imprisonment; a 1-year period of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 62 years imprisonment; a 3-year period of supervised release[1]; a fine of $1,000,000, or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $400.

10.   Defendant understands that the statutory mandatory minimum

---

[1] Defendant understands that there is case law suggesting that the term of supervised release on Count One could be imposed to run consecutively to the terms of supervised release on Count Eleven. While the USAO does not intend to seek a consecutive term of supervised release, defendant understands that if the Court were to impose a consecutive term of supervised release, the maximum term of supervised release for all of the counts of conviction would be four years, rather than three years as stated in the text above.

sentence that the Court must impose for a violation of 18 U.S.C.
§ 1028A(a)(1), as charged in count eleven of the indictment, is a 2-
year term of imprisonment, which must run consecutive to any other
sentence of imprisonment, and a mandatory special assessment of $100.

11.   Defendant understands that defendant will be required to
pay full restitution to the victims of the offenses to which
defendant is pleading guilty.  Defendant agrees that, in return for
the USAO's compliance with its obligations under this agreement, the
Court may order restitution to persons other than the victims of the
offenses to which defendant is pleading guilty and in amounts greater
than those alleged in the counts to which defendant is pleading
guilty.  In particular, defendant agrees that the Court may order
restitution to any victim of any of the following for any losses
suffered by that victim as a result: (a) any relevant conduct, as
defined in U.S.S.G. § 1B1.3, in connection with the offenses to which
defendant is pleading guilty; and (b) any counts dismissed pursuant
to this agreement as well as all relevant conduct, as defined in
U.S.S.G. § 1B1.3, in connection with those counts.  The parties
currently believe that the applicable amount of restitution is
approximately $1.5 million, but recognize and agree that this amount
could change based on facts that come to the attention of the parties
prior to sentencing.  Defendant agrees to not oppose any order of
restitution as to any victims charged in the indictment, whether or
not part of the counts of conviction.

12.   Defendant understands that supervised release is a period
of time following imprisonment during which defendant will be subject
to various restrictions and requirements.  Defendant understands that
if defendant violates one or more of the conditions of any supervised

release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

14.   Defendant and her counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and

immigration consequences are the subject of a separate proceeding and
that no one, including her attorney or the Court, can predict to an
absolute certainty the effect of her convictions on her immigration
status. Defendant nevertheless affirms that she wants to plead
guilty regardless of any immigration consequences that her pleas may
entail, even if the consequence is automatic removal from the United
States.

FACTUAL BASIS

15. Defendant admits that defendant is, in fact, guilty of the
offenses to which defendant is agreeing to plead guilty. Defendant
and the USAO agree to the statement of facts provided below and agree
that this statement of facts is sufficient to support pleas of guilty
to the charges described in this agreement and to establish the
Sentencing Guidelines factors set forth in paragraph 17 below but is
not meant to be a complete recitation of all facts relevant to the
underlying criminal conduct or all facts known to either party that
relate to that conduct:

**A.    Fraudulent Influencer Scheme**

Beginning no later than August 2018 and continuing until at
least in or around September 2020, in Los Angeles, California, in the
Central District of California, defendant knowingly, and with the
intent to defraud, participated in, devised, and executed a scheme to
defraud Authentic Brand Group, House of CB, Pretty Little Thing, and
Fashion Nova (collectively, the "company victims"), and to obtain
money and property from the company victims by means of materially
false and fraudulent pretenses, representations, and promises,
including by falsely impersonating B.M., K.J., J.S., V.V., and L.R.
(the "identity theft victims").

To operate the scheme to defraud, defendant identified social media accounts associated with the identity theft victims; created fraudulent email accounts that displayed names similar to the names of the identity theft victims; used fraudulent email accounts and text messages to impersonate those victims to solicit money, jewelry, and other products from the company victims; and induced the company victims to part with money and property by making materially false and fraudulent statements.  Those misrepresentations included (a) emails and texts defendant sent to the company victims claiming that such communications were being sent by or on behalf of the identity theft victims; (b) defendant's false statements representing that she had authority to enter into "Influencer Agreements" and other contracts on behalf of the identity theft victims; and (c) defendant's false statements that, in exchange for payment or products, the identity theft victims would use their social media platforms to advertise and otherwise promote the company victims' products.

After convincing the company victims that she was authorized to act on behalf of the identity theft victims, defendant then entered into fraudulent contracts with the company victims, including Influencer Agreements, which defendant would sign in the names of the identity theft victims.  At defendant's direction, the company victims then transferred money to defendant's bank accounts or sent products to defendant's house that she subsequently resold to third parties to obtain money.

To execute this scheme to defraud, defendant knowingly transmitted and caused the transmission of (i) emails sent from fraudulent email accounts in Los Angeles, California to victim

companies outside of California that she falsely claimed were being sent by or on behalf of the identity victims on August 16, 2018, November 5, 2018, February 27, 2019, March 7, 2019, March 29, 2019, April 13, 2019, and June 4, 2019; and (ii) money transfers from a PayPal account purportedly associated with the identity theft victims to a Bank of America account ending in -0858 in Los Angeles, California on March 26, 2019, April 18, 2019, and June 17, 2019. Defendant knowingly transmitted or caused the transmission of these items by means of wire communications that traveled in interstate and foreign commerce.  In total, through her scheme, defendant, knowingly and with the intent to deceive and cheat, caused the company victims to send her at least $120,947 in money and merchandise.

In this scheme, defendant knowingly possessed and used without legal authority a means of identification of other persons, during and in relation to the offense of wire fraud, in violation of 18 U.S.C. § 1343.  At all relevant times, defendant knew that the means of identification belonged to real persons.  Specifically, on August 16, 2018, in Los Angeles County, within the Central District of California, defendant knowingly possessed and used, without lawful authority, means of identification that defendant knew belonged to victims V.V. and K.J., during and in relation to the offense of wire fraud.  Similarly, on March 7, 2019, in Los Angeles County, within the Central District of California, defendant knowingly possessed and used, without lawful authority, a means of identification that defendant knew belonged to victim B.M., during and in relation to the offense of wire fraud.

13

## B.    Fraudulent Target Returns Scheme

Additionally, beginning no later than November 2021 and continuing to at least March 2023, in Los Angeles, California, within the Central District of California, defendant knowingly, and with the intent to defraud, devised and participated in a scheme to defraud Target Corporation ("Target") as to material matters, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts, including by returning counterfeit products to Target to collect fraudulent refunds ("Target Returns Scheme").

To execute the Target Returns Scheme, defendant would create online Target Circle Loyalty Program ("Target Circle") accounts using false and fraudulent information, including fake names. Defendant would link the Target Circle accounts to payment methods, including debit cards, that she accessed and controlled. Defendant would buy products from Target using the Target Circle accounts she fraudulently created. The products she bought were primarily electronic devices, including cell phones, tablets, and watches. Defendant would also buy counterfeit "dummy" replicas of the same or similar electronics. While the counterfeit replicas looked like authentic cell phones, tablets, or watches from brands such Apple, Google, Samsung, or Amazon, they were not functional or fully functional. Defendant would then remove the packaging from the authentic electronics and replace them with the counterfeit replicas she had purchased.

Defendant would then knowingly and fraudulently return the counterfeit replicas to Target, claiming to be entitled to a refund for the cost of the authentic electronics, and falsely representing

that she was returning the same, authentic electronics that she had previously bought from Target.  On some occasions, defendant would visit multiple Target stores in a single day, where she fraudulently bought authentic electronics and returned or attempted to return counterfeit devices to fraudulently collect refunds.  In total, defendant bought or refunded products from approximately over 180 different Target locations in furtherance of her fraudulent scheme.

Defendant would then sell the original, authentic electronics to third-party vendors and keep the proceeds.  In total, through her scheme, defendant caused Target to issue her approximately over $840,000 in reimbursements.

During the execution of the Target Returns Scheme, defendant transmitted and caused the transmission of items by means of wire communication in interstate and foreign commerce, including, but not limited to the following:

(1) On October 25, 2022, defendant purchased an authentic Apple Watch from a point-of-sale terminal at the Target store located at 10820 Jefferson Blvd., Culver City, California, using the Target Circle account 10057133719, and a payment of $584.31 from defendant's Capital One debit card, causing a wire communication between the Central District of California and the State of Minnesota;

(2) On November 2, 2022, defendant purchased an authentic Apple iPhone and two authentic Samsung Galaxy smartphones from a point-of-sale terminal at the Target store located at 1621 S. Alameda St., Compton, California, using the Target Circle account 20109827922, and a payment of $1,824.60 from defendant's Capital One debit card, causing a wire communication between the Central District of California and the State of Minnesota;

(3) On November 17, 2022, defendant returned counterfeit electronic devices at a point-of-sale terminal at the Target store located at 2705 Teller Road, Thousand Oaks, California, for two refund credits from Target totaling $1,793.66 to defendant's HSBC debit card, resulting in a wire communication between the Central District of California and the State of Minnesota;

(4) On December 2, 2022, defendant returned counterfeit electronic devices at a point-of-sale terminal at the Target store located at 26932 La Paz Road, Aliso Viejo, California, for a refund credit from Target of $584.32 to defendant's HSBC debit card, resulting in a wire communication between the Central District of California and the State of Minnesota; and

(5) On December 2, 2022, defendant returned counterfeit electronic devices at a point-of-sale terminal at the Target store located at 30602 Santa Margarita Parkway, Rancho Santa Margarita, California, for a refund credit from Target of $1,296.99 to defendant's Capital One debit card, resulting in a wire communication between the Central District of California and the State of Minnesota.

In addition, on December 13, 2022, for the purpose of executing the above-described scheme to defraud, defendant knowingly caused eBay, a private and commercial interstate carrier, to deliver an eBay Standard package, bearing eBay Order Number 1381248, containing a "Samsung Galaxy Tab 10.1 LTE I905 Replica Dummy Tablet / Toy Tablet (White)," shipped from Unlimited Cellular to defendant in Los Angeles, California.

### C.  Fraudulent DoorDash Cancellation Scheme

Additionally, beginning no later than November 2022 and continuing to at least November 2023, in Los Angeles, California, within the Central District of California, defendant knowingly, and with the intent to defraud, devised and participated in a scheme to defraud DoorDash, Inc. ("DoorDash") as to material matters, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts, including by fraudulently cancelling delivery orders to receive refunds for products she had in fact received (the "DoorDash Cancellation Scheme").

To execute the DoorDash Cancellation Scheme, defendant would create online DoorDash customer accounts using false and fraudulent information, including fake names.  Some of defendant's false DoorDash customer accounts used email addresses impersonating the names of the identity theft victims B.M. and J.S.  Defendant would link the DoorDash customer accounts to payment methods, including debit cards, that she accessed and controlled.  Defendant would buy products from various vendors, including Target and Sephora, through DoorDash delivery.  Defendant would receive the products from DoorDash's contracting delivery persons, called "Dashers."  Defendant would then call the DoorDash telephone support call center and report that the customer never received the products.  Defendant would instruct the DoorDash representative to "reverse the status" of the order, i.e., to change the order status from "delivered" to "not delivered" or "in progress."  She would then request that the DoorDash representative cancel the order for the products she had already received.

To convince DoorDash representatives to change the orders' status, defendant would make false statements to the DoorDash representatives, including the following:

a.   In some cases, defendant would fraudulently pretend to be the store owner and would falsely state that the products were never delivered to the customer because, for example, her store could not fulfill the order or because the Dasher never picked up the order.

b.   In other cases, defendant would fraudulently pretend to be a legitimate customer and would falsely state that she never received the products because, for example, the Dasher never delivered the products or because the Dasher was taking too long.

c.   In some cases, defendant made false statements regarding Dashers and attempted to prevent them from being paid.  For example, on May 18, 2023, in a recorded call defendant placed to the DoorDash telephone support call center, defendant gave a false name, falsely stated she worked for Sephora, and falsely stated: "Hello, so the Dasher marked the order as completed, but the item was never delivered, it's still at my store.  Can you remove the Dasher from the order and reverse the status so he doesn't get paid for it?"  In another call defendant placed on May 18, 2023, to the DoorDash telephone support call center, defendant falsely stated: "Hi, so the Dasher stole my order, um, can you make sure that he, can you make sure that he, um, gets suspended and doesn't work?"

d.   In some cases, defendant would create a DoorDash customer account profile with a fake address to avoid detection, and would subsequently call the DoorDash representative to change the delivery address to her real address.

1    Through the DoorDash Cancellation Scheme, defendant fraudulently

2    received reimbursements for products defendant had received.  In

3    total, defendant made over 1,000 recorded calls to the DoorDash

4    telephone support call center and caused DoorDash to send her over

5    approximately $42,000 in fraudulently-received reimbursements.

6        To execute the DoorDash Cancellation Scheme, defendant

7    transmitted and caused the transmission of items by means of wire

8    communication in interstate and foreign commerce, including, but not

9    limited to the following:

10    (1) On April 14, 2023, defendant placed a call from within the

11    Central District of California to the DoorDash telephone support call

12    center outside of California, in which defendant QUAN stated: "Hi, so

13    I work at the store.  I need you to reverse the status and unassign

14    the dasher from a completed order, because the item was marked as

15    delivered, but it's still in my, um, store.... My store's name is

16    Target.  The customer's name is Rosie, and the phone number is 213-

17    806-0262."

18    (2) On April 19, 2023, defendant placed a call from within the

19    Central District of California to the DoorDash telephone support call

20    center outside of California, in which defendant QUAN stated: "Hello,

21    I work at the restaurant, I need you to reverse the status and

22    unassign the dasher from a completed order because the item is still

23    at my store.... Yeah, the customer's name is Maggie G.  My store's

24    name is Sephora; I'm the owner.  My name is Laura.... Now please,

25    please cancel it 'cause, um, we aren't able to fulfill it no more....

26    Now I - yeah I need you to reverse another order and cancel it.  So

27    my other order is for the same customer but at my other store called

28    Target.  Same issue.... The store Target, I own that as well, and it

has the same issue, so I'm going to need you to reverse the status
and cancel.... Now for one more order, I need you to reverse the
status and cancel it.... the order is called Target, as well.... Can
you refund the customer to her card? ... So did this get refunded to
her credit card, sweetheart? ... Thank you, sweetie."

(3) On May 14, 2023, defendant placed a call from within the
Central District of California to the DoorDash telephone support call
center outside of California, in which defendant QUAN stated: "My
name is Henry H. ... the order is for Victoria's Secret ... So change
it to the 617 W. Century Boulevard address I have on file as well."

(4) On July 1, 2023, defendant placed a call from within the
Central District of California to the DoorDash telephone support call
center outside of California, in which defendant QUAN stated: "Hi, I
need you to cancel the order because it's taking way too long, so do
you want the name and phone number to my account? ... My name is Nina
dot D as in dog, my phone number is – um, sorry, my name is Jessica
Sam.... So cancel it and get me a full refund to my original mode of
payment."

(5) On July 19, 2023, defendant placed a call from within the
Central District of California to the DoorDash telephone support call
center outside of California, in which defendant QUAN stated: "Hi,
um, I work at the restaurant. There was a completed order; however,
the item is still at my store.  I need you to unassign the driver and
reverse the status, can you do that for me, please? ... The name is
Mina D as in dog."

**D.    Enhancements**

Across each of the fraud schemes discussed herein, defendant
caused total actual losses to victim of more than $550,000.   In

addition, defendant's frauds involved ten or more victims, including, but not limited to, the individuals B.M., K.J., J.S., V.V., and L.R., and the corporations Authentic Brand Group, House of CB, Pretty Little Thing, Fashion Nova, Target, and DoorDash.

Pursuant to 18 U.S.C. § 3147, defendant continued the DoorDash Cancellation Scheme after defendant was released under Title 18, United States Code, Chapter 207, in the criminal case of United States v. Quan, 2:23-CR-00314-HDV, in the United States District Court for the Central District of California.

SENTENCING FACTORS

16. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crimes of conviction.

17. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss amount exceeding $550,000: | +14 | U.S.S.G. § 2B1.1(b)(1) |
| 10 or more victims: | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  In particular, the government intends to argue at sentencing that a two-level enhancement under U.S.S.G. § 3C1.1 and that an upward departure under U.S.S.G. § 4A1.3(a) of the Sentencing Guidelines should apply.

18.  Defendant understands that the Court must sentence defendant to a term of two years of imprisonment on count eleven, which must run consecutive to any term of imprisonment imposed for count one.

19.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

21.  Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.  The right to persist in a plea of not guilty.

      b.  The right to a speedy and public trial by jury.

      c.  The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

     d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

     e.    The right to confront and cross-examine witnesses against defendant.

     f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

     g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

     h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION; WAIVER OF COLLATERAL ATTACK

22.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

23.  Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of

1   counsel, a claim of newly discovered evidence, or an explicitly

2   retroactive change in the applicable Sentencing Guidelines,

3   sentencing statutes, or statutes of conviction.  Defendant

4   understands that this waiver includes, but is not limited to,

5   arguments that the statutes to which defendant is pleading guilty are

6   unconstitutional, and any and all claims that the statement of facts

7   provided herein is insufficient to support defendant's pleas of

8   guilty.

9                    <u>WAIVER OF APPEAL OF SENTENCE</u>

10       24.  Defendant gives up the right to appeal all of the

11  following: (a) the procedures and calculations used to determine and

12  impose any portion of the sentence; (b) the term of imprisonment

13  imposed by the Court; (c) the fine imposed by the Court, provided it

14  is within the statutory maximum; (d) to the extent permitted by law,

15  the constitutionality or legality of defendant's sentence, provided

16  it is within the statutory maximum; (e) the amount and terms of any

17  restitution order, provided it requires payment of no more than $1.5

18  million; (f) the term of probation or supervised release imposed by

19  the Court, provided it is within the statutory maximum; and (g) any

20  of the following conditions of probation or supervised release

21  imposed by the Court: the conditions set forth in Second Amended

22  General Order 20-04 of this Court; the drug testing conditions

23  mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and

24  drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

25       25.  This agreement does not affect in any way the right of the

26  USAO to appeal the sentence imposed by the Court.

27

28

## RESULT OF WITHDRAWAL OF GUILTY PLEA

26.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

27.  Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining count of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

## EFFECTIVE DATE OF AGREEMENT

28. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

29. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

30. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any

26

1   speedy trial claim with respect to any such action, except to the
2   extent that such defenses existed as of the date of defendant's
3   signing this agreement.

4          c.    Defendant agrees that: (i) any statements made by
5   defendant, under oath, at the guilty plea hearing (if such a hearing
6   occurred prior to the breach); (ii) the agreed to factual basis
7   statement in this agreement; and (iii) any evidence derived from such
8   statements, shall be admissible against defendant in any such action
9   against defendant, and defendant waives and gives up any claim under
10  the United States Constitution, any statute, Rule 410 of the Federal
11  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
12  Procedure, or any other federal rule, that the statements or any
13  evidence derived from the statements should be suppressed or are
14  inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
## OFFICE NOT PARTIES

17  31.  Defendant understands that the Court and the United States
18  Probation and Pretrial Services Office are not parties to this
19  agreement and need not accept any of the USAO's sentencing
20  recommendations or the parties' agreements to facts or sentencing
21  factors.

22  32.  Defendant understands that both defendant and the USAO are
23  free to: (a) supplement the facts by supplying relevant information
24  to the United States Probation and Pretrial Services Office and the
25  Court, (b) correct any and all factual misstatements relating to the
26  Court's Sentencing Guidelines calculations and determination of
27  sentence, and (c) argue on appeal and collateral review that the
28  Court's Sentencing Guidelines calculations and the sentence it

1    chooses to impose are not error, although each party agrees to
2    maintain its view that the calculations in paragraph 17 are
3    consistent with the facts of this case.  While this paragraph permits
4    both the USAO and defendant to submit full and complete factual
5    information to the United States Probation and Pretrial Services
6    Office and the Court, even if that factual information may be viewed
7    as inconsistent with the facts agreed to in this agreement, this
8    paragraph does not affect defendant's and the USAO's obligations not
9    to contest the facts agreed to in this agreement.

10       33.  Defendant understands that even if the Court ignores any
11   sentencing recommendation, finds facts or reaches conclusions
12   different from those agreed to, and/or imposes any sentence up to the
13   maximum established by statute, defendant cannot, for that reason,
14   withdraw defendant's guilty pleas, and defendant will remain bound to
15   fulfill all defendant's obligations under this agreement.  Defendant
16   understands that no one -- not the prosecutor, defendant's attorney,
17   or the Court -- can make a binding prediction or promise regarding
18   the sentence defendant will receive, except that it will be between
19   the statutory mandatory minimum and within the statutory maximum.

20                        NO ADDITIONAL AGREEMENTS

21       34.  Defendant understands that, except as set forth herein,
22   there are no promises, understandings, or agreements between the USAO
23   and defendant or defendant's attorney, and that no additional
24   promise, understanding, or agreement may be entered into unless in a
25   writing signed by all parties or on the record in court.

26
27
28

1

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

35.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

JOSEPH T. MCNALLY
Acting United States Attorney

_____          2/3/2025
DIANE ROLDÁN                       _____
Assistant United States Attorney    Date

_____          2-3-2025
JENNIFER QUAN                      _____
Defendant                           Date

_____          2-3.25
MARK CHAMBERS                      _____
Attorney for Defendant JENNIFER QUAN   Date

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or

29

representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

JENNIFER QUAN                           Date  2-3-2025
Defendant

### CERTIFICATION OF DEFENDANT'S ATTORNEY

I am JENNIFER QUAN's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

MARK CHAMBERS                           Date  2-3-25
Attorney for Defendant
JENNIFER QUAN

30